Baxter *v.* Duren.

WILLIAM H. BAXTER *versus* E. F. DUREN.

One who sells a promissory note by delivery, upon which the names of indorsers have been forged, is not liable upon an *implied* promise, to refund the money received therefor, if he sold the same as property, and not in payment of a debt, and if he did not know of the forgery.

In an action by the purchaser against the seller of such a note, *so sold,* the broker, through whom the sale was negotiated, is a competent witness for the plaintiff if he was ignorant of the forgery, and if he did not make himself liable by any promise or representation concerning the note. For, in such case he would not be liable to the plaintiff, and would have no interest that the plaintiff should recover.

Any one dealing with a person whom he knows to be a broker, may be presumed to know, from the nature of a broker's business, that he is acting as agent for some third person. — Per SHEPLEY, C. J.

THIS was an action of assumpsit upon a supposed warranty of the genuineness of the signatures of two indorsers upon a promissory note.

At the trial, before WELLS, J., it appeared that on the 17th day of June, 1847, *C. & J. S. Bedlow* made their note payable to *J. P. Wheeler,* or order, for $368,00, at thirty days, payable at the Suffolk Bank, Boston, which note purported to be indorsed by J. P. Wheeler and William Deming.

*William H. Wood* was called by plaintiff, and testified, though objected to by defendant, that he had been a broker in Portland for a number of years past, and that defendant applied to him to get this note discounted, sometime before it fell due ; that in conversation he said the note was such paper as he would sell goods for. The witness applied to the plaintiff to buy the note. The plaintiff authorized Wood to take it, and said he would pay for it, $300, with the further sum of $25 more, if the note was paid at maturity. And the money was paid through Wood to defendant, by the plaintiff, who took the note. Witness was employed by the defendant, and his services paid for by him. At that time there was no suspicion that indorsers' signatures were not genuine. The witness knew defendant was acting for the *Bedlows,* but could not certainly say that he informed the plaintiff, that the de-

fendant was acting as agent for them or any one else. The defendant did not indorse or guarantee the note. In regard to the whole matter, the witness testified, that he acted in his ordinary mode of business. It further appeared, that the signatures of the indorsers were forgeries, and that before the commencement of this action the plaintiff tendered to the defendant, the execution issued upon a judgment recovered by him upon this note against the *Bedlows*, and that he demanded of the defendant the money he had paid him for it. Before the note became due the *Bedlows* failed.

The money received for the note was deposited in one of the Portland Banks to the credit of the *Bedlows*.

The case was then taken from the jury by consent, for the decision of the full Court upon so much of the testimony as was legally admissible, and a nonsuit or default to be entered according to the rights of the parties.

*Fox*, for plaintiff.

1st. There was sufficient evidence for a jury to find an express warranty on the part of Duren.

Wood testifies that Duren represented to him, that the " note was such paper as he would sell goods for" and that he so informed plaintiff, when he applied to him to discount the note, " the paper was spoken about and there was no suspicion about the genuineness of the paper at any time." " The makers had but little credit, the indorsers were good."

All this conversation, we say, is equivalent to a representation, that the indorsements of Wheeler and Deming were genuine, and brings the case within the decision of *Coolidge* v. *Brigham*, 1 Metc. 552.

The whole together must be considered as a description of the note sold, or discounted.

2. If there is no express warranty, there is an implied one, that the indorsements were genuine.

Whoever sells or puts in circulation a note, impliedly warrants that it is what it purports to be, the genuine, valid, legal contract of all who are parties to it apparently, and that they

are legally competent to contract. *Fuller* v. *Smith*, 1 C. & P. 197, is almost directly in point.

Plaintiffs discounted for defendants, a bill of exchange which was a forgery. Defendants were agents for one Simpson to whom the money was paid over, before defendant had any knowledge of the forgery. ABBOT, C. J. ruled, that defendants were liable for amount whether it was paid over or not. *Young* v. *Cole*, 3 Bing. N. C. 730 ; *Jones* v. *Ride, vide* 5 Taunt. 488 ; Chitty on Contracts, 5th ed. page 629 ; *Lobdell* v. *Baker*, 3 Metc. 472.

The fact that defendant was an agent and acting for others, does not affect the principle. He disclosed his agency to Wood, who was his agent only, and not the agent of both parties, and Wood did not disclose to plaintiff, that Duren was acting for another. *Fuller* v. *Smith*, before cited, settles this.

That Wood was defendant's agent and not ours, and that defendant must be answerable for Wood's doings, and his not disclosing that Duren was acting as agent. See *Lobdell* v. *Baker*, 1 Metc. 193.

In that case, *Winslow*, the broker, who sold the note, was held to be the agent only of the seller.

The remarks of the Court, on page 202 and 204, in the conclusion of the opinion, are decisive on this point.

There was an implied warranty of title, and nothing passed by this note. *Coolidge* v. *Brigham*, 1 Metc. 551.

We claim as damages, the amount paid for the note, $300 and interest. *Coolidge* v. *Brigham*, 5 Metc. 72.

*G. F. Shepley*, for defendant.

1st. Wood, the broker, was improperly admitted to testify, since, dealing in his own name, without disclosing his principal, he is directly liable to plaintiff, and not a competent witness for him without a release. *Hickling* v. *Fitch*, 1 Miles, 208, (Pennsylvania.) "Where the agent contracts in such a form as to render himself personally responsible, he cannot afterwards relieve himself from responsibility." Lord DENMAN, C. J. in *Jones* v. *Littledale*, 6 Ad. & El. 486. The rule for admit-

ting agents to testify, does not extend to one who is agent merely in the particular transaction.    *Edmonds* v. *Lowe*, 8 Barn. & Cres. 407.

2d. Wood was the agent of the Bedlows, and not of defendant, who never pretended to act for himself in the transaction; the agent of the owners of the note, and not of one whose office was merely to put it in the broker's hands.    The rights and liabilities of a person acting in such manner are fixed by law, and it is not competent for him subsequently, and of his own motion, without more, to hold himself out as having acted for any others than those for whom, under the circumstances, the law presumes him to have acted.    Story on Agency, p. 30, and seq. and note; *Freeman & al.* v. *Loder*, 11 Ad. & El. 589.

Wood testifies that he did not act in any manner as agent of plaintiff; hence his knowledge that he, (Wood,) was acting for the Bedlows was not, constructively, the knowledge of the plaintiff; and hence he is liable, by custom, to him, and interested and incompetent without a release.    *Vide Freeman & al.* v. *Loder, ub. sup.*

3d. Duren is not liable by reason of either an express or implied contract.    An agent is not personally bound upon a contract made as agent, unless first, credit was given to him exclusively, or secondly, he has given no right of action against his principal.    *Rathbone* v. *Budlong*, 15 Johns. 1; *LaFarge* v. *Kneeland*, 7 Cowen, 456; *Bradford & al.* v. *Eastburn*, 2 Wash. C. C. R. 219; *Smout* v. *Ibbery*, 10 Mees. & Welsby, 1; *Bradley* v. *Boston Glass Manuf. Co.* 16 Pick. 347; 3 Starkie on Evidence, 1198; 1 American Leading Cases, 449.

If money is paid to agent, and becomes recoverable back, on account of mistake or failure of consideration, the agent himself is not liable to a suit, if he has paid it over to his principal, *bona fide,* before notice.    *Gray* v. *Otis*, 11 Vermont, 628; *Gates* v. *Winslow*, 1 Mass. 66; 1 Am. Leading Cases, 464, *Fenn* v. *Harrison*, 3 Term Rep. 757.

There was no express contract to render defendant liable. The words used by him, clearly did not amount to a warranty.    In order that they should do this, it is requisite, that

they should have been received and relied on by plaintiffs, as such. *Osgood* v. *Lewis*, 2 Har. & Gil. 495.

But it is very plain, that they were neither meant nor received as a warranty, either of the genuineness of the paper, for that was not questioned by any one, or of the responsibility of the indorsers, for both plaintiff and Wood knew them to be "undoubted." And as it does not appear that plaintiff knew that defendant ever had any thing to do with the note, he must have relied on them. The words therefore, could have been meant or received only as a mere commendation, and *simplex commendatio non obligat*. *Morrill* v. *Wallace*, 9 W. H. 111. *Ricks* v. *Dillahunty*, 8 Port. 133 ; *Erwin* v. *Maxwell*, 3 Murphy, 246 ; 2 Kent's Comm. 630, and seq.

The doctrine that a person who transfers a negotiable security, shall be held impliedly to warrant its genuineness, if true in any case, is not applicable to agents for a special purpose, trustees, or persons who are acting *bona fide* for others who are disclosed, themselves having no interest. 2 Kent's Comm. 478, and analogous cases of *Bree* v. *Halbeck*, 2 Douglass, 654 ; *Mackbee* v. *Gardner*, 2 Harr. & Gil. 176.

This case differs widely from *Jones & al.* v. *Ryde*, 5 Taunt. 488, since the plaintiff *speculated* on the value of the note, not *discounting* but *buying* it. In *Jones* v. *Ryde*, there was no evidence that defendants did not hold themselves out as owners. And in *Fuller* v. *Smith*, Ryan & Moody, p. 49, " the payment to the defendants was made on the strength of their possession and negotiation of the bill," disclosing no principal.

The opinion of the Court, HOWARD, J. taking no part in the decision, having formerly been engaged in the cause, was delivered by

SHEPLEY, C. J. — A promissory note was made at Calais on June 17, 1847, by C. & J. S. Bedlow, for $368, payable to J. P. Wheeler or order, in thirty days from date, at the Suffolk bank, Boston, and purporting to be indorsed by J. P. Wheeler and by William Deming. This note the defendant handed to

William H. Wood, a broker, without indorsing it, for discount or sale. The broker sold the note at a discount to the plaintiff. The note was not paid. The indorsements of the names of Wheeler and Deming were forged. Of this fact, the plaintiff, defendant, and broker were entirely ignorant. The broker was informed that the defendant was acting as agent of the Bedlows. There is no proof, that the broker informed the plaintiff, that he was acting for the defendant, or that the defendant was acting for the Bedlows.

The plaintiff may be presumed to have known from the nature of the broker's business, that he was acting as the agent of some person unknown. The broker is, therefore, in the position of one dealing with the plaintiff as an agent, without disclosing his principal.

When a person deals with a broker, knowing him to be acting as the agent of some person unknown, the rights of the parties are governed by the rule, which prevails, when a person not known to be an agent, deals with another as agent, without disclosing his principal. *Thompson* v. *Davenport*, 9 B. & C. 78. Wood, the broker, in this case, is therefore in the position, as it respects the plaintiff, of an agent dealing with him without disclosing his principal. The defendant is in a like position dealing with the plaintiff by an agent, and yet dealing with him as an agent, without disclosing his principal. It would therefore seem to be clear, that if the plaintiff can maintain an action to recover back the money, which he paid for the note, of the defendant, on the ground alone, that he sold the note without disclosing his principal, he may upon the same principles, maintain an action for the same purpose against the broker, because he sold the note without disclosing his principal. For the broker cannot be considered as having disclosed his principal by stating, that the defendant said he would sell goods for the paper, when he says, that he could not positively say, that he informed the plaintiff, that he was acting for the defendant. The broker might have stated the opinions of many persons respecting the paper, without making any disclosure that he was acting as their agent or as the agent of any one of them.

If Wood be liable to refund the money to the plaintiff, he will be relieved from that liability by enabling the plaintiff, by his testimony, to recover the amount of the defendant, for a recovery against the principal relieves the agent from his liability. *Thompson* v. *Davenport*, before cited. When a witness is so situated, that his testimony will relieve him from liability and place him in a state of security, if the party calling him recovers judgment, he is regarded as interested in the event of the suit, and as incompetent. 1 Greenl. Ev. § 393, 396.

It becomes therefore necessary to inquire whether Wood, by making sale of the note, by delivery merely without indorsement, and without making as of his own knowledge any representations respecting it, and without disclosing his principal, became liable to refund the money, which he obtained by the sale of it.

The determination of this question will also determine, whether the defendant is in like manner liable, unless he shall prove to be liable on account of what he said respecting the note.

The cases decided upon this point are apparently rather than really in conflict, although it may be difficult to reconcile all the observations made by different Judges in communicating their opinions. This apparent conflict arises from an omission to notice a distinguishing feature.

When an innocent holder of negotiable paper parts with it by delivery without indorsing it, in payment of a debt due, or then created, as for example, in payment for goods then purchased, or by way of discount for money then loaned by a bank, banker or individual, and the paper proves to have been forged, the debt or loan, not being paid by it, may be recovered. In such case there is a warranty implied by law, that the paper is genuine, as there is, that coin or bank notes used for like purposes, are genuine. *Jones* v. *Ryde*, 5 Taunt. 488; *Fuller* v. *Smith*, 1 C. & P. 197; *Camidge* v. *Allenby*, 6 B. & C. 204, per Littledale, J.; *Coolidge* v. *Brigham*, 1 Metc. 547.

When no debt is due or created at the time, and the paper

is sold, as other goods and effects are, the purchaser cannot recover from the seller the purchase money. There is in such case no implied warranty of the genuineness of the paper. The law respecting the sale of goods is applicable. The only implied warranty is, that the seller owns or is lawfully entitled to dispose of the paper or goods. *Bank of England* v. *Newman,* 1 Ld. Raym. 442; *Fenn* v. *Harrison,* 3 T. R. 757; *Fydell* v. *Clark,* 1 Esp. R. 447; *Emly* v. *Lye,* 15 East, 6; *Ex parte Shuttleworth,* 3 Ves. 368; *Ex parte Blackburne,* 10 Ves. 204; *Ellis* v. *Wild,* 6 Mass. 321.

This distinction is recognized and stated to be the law, in Chitty on Bills, 10th American ed. 245, 246.

The same doctrine, although not stated in the text, is cited with approbation as derived from Chitty, by Story on Promissory Notes, in note 4, under § 118.

The principal difficulty appears to have been experienced in coming to a conclusion, whether the paper when discounted or sold, was received in payment of a debt or loan due or then created, or taken by way of purchase and sale. The use of the word discount in two different senses, has also contributed to introduce obscurity. It being used in some of the cases, and by some Judges to designate the reception of paper in payment of a loan, or debt, and in other cases and by other Judges, in the sense in which it appears to have been used by the broker in this case, to designate the reception of it on a sale as a piece of property.

In the present case there can be no such difficulty, for although the broker speaks of the transaction as a discount of the note, there was no proposal to obtain a loan, and the paper was sold at its estimated value, being much less than the sum, for which the note was made.

Wood therefore, not being liable to refund the amount received for the note, is a competent witness.

It results also from the application of the same rule of law, that the defendant is not liable without proof of an express warranty, for he had a right to dispose of the note as a piece

of property, deriving his authority from the makers, who were liable to pay it.

The only remark, which according to the proof the defendant made respecting it, was, that " he would sell goods for the paper." This cannot be regarded as a warranty that the signatures were genuine or that the makers or indorsers were responsible. It was the expression of confidence or of an opinion by way of recommendation, that the paper was good, and that it would be paid. The expression of such confidence renders the person liable only, when fraudulently made with a knowledge, which would prevent its being truly made. It is evident also, that it was not regarded as a warranty or relied upon by the plaintiff as such, for according to the testimony of Wood, he knew, that the credit of the indorsers was undoubted.

*Plaintiff nonsuit.*

NOTE. — HOWARD, J. had been of counsel and took no part in this decision.